JASON WILEY                          *
REESHA WILEY
5804 Annapolis Rd.                   *      IN THE
Apt. 711
Bladensburg, MD 20710,               *      CIRCUIT COURT FOR

       *Plaintiffs*                  *      FOR PRINCE GEORGE'S COUNTY

              v.                     *      CASE NO.: CAL14- 17155

REGIONAL ACCEPTANCE CORPORATION *           JURY DEMANDED
1202 East Fire Tower Road
Greenville, NC 27858                 *
SERVE ON:
The Corporation Trust, Inc.          *
351 West Camden Street
Baltimore, MD 21201,                 *

       *Defendant.*

*     *     *     *     *     *     *     *     *     *     *     *     *

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Jason Wiley and Reesha Wiley, through their attorneys Thomas J. Minton and

Goldman and Minton, P.C., make the following complaint against Defendant Regional Acceptance

Corporation ("RAC").

## I.    INTRODUCTION

1.  Plaintiffs Jason and Reesha Wiley are husband and wife.  They reside in Prince George's

County.

2.  In November 2007, the Plaintiffs purchased a used 2004 Honda Accord automobile from

Majestic Motor Cars, Inc., a licensed Maryland car dealer located in Glen Burnie, Maryland.

3.  The Plaintiffs financed the purchase of the car by entering into a Retail Installment Sale

Contract (RISC) with Majestic, who arranged the financing and then assigned or sold the loan to

RAC.

EXHIBIT

A

4. The Wileys' financing contract was a Closed End Sale Contract governed by Title 12, Subtitle 10 of the Maryland Commercial Law Article ("CLEC").

5. The RISC had a 20% Annual Percentage Rate, included finance charges of $10,224.45, and required the Wileys to make 60 monthly payments to RAC in the amount of $453.17 beginning in December 2007.

6. RAC is licensed by the Maryland Commissioner of Financial Regulation as a "sales finance" lender, and lists its licensed Maryland office address as 300 Redland Court, Suite 102, Owings Mills, MD 21117.

7. Upon information and belief, RAC has purchased or originated hundreds of Maryland consumer loans since 2007, and regularly provides financing in Maryland for consumer car purchases. As part of its financing contracts, RAC acquires security interests in the cars.

8. RAC enforces its security interests by initiating and ordering repossession of the cars owned by borrowers who default on their loans. RAC also files lawsuits in Maryland seeking deficiency judgments against some borrowers following the auction sales of the repossessed cars.

9. This action arises from RAC's violation of Title 12, Subtitle 10 of the Maryland Commercial Law Article in the course of the repossession process; RAC does not provide defaulting borrowers with complete and accurate notices of repossession, or with complete and accurate notices of sale, as required by Comm. Law Code § 12-1021.

10. Venue is proper in this Court because Plaintiffs reside in Prince George's County, the repossession of their car occurred in Prince George's County, and communications from RAC to the plaintiffs about their account were sent to Prince George's County.

## II.    FACTS APPLICABLE TO NAMED PLAINTIFFS

11. After Plaintiffs purchased the car, they made a number of monthly payments. Eventually, however, they fell behind.

12. In January 2013, RAC drafted a notice of its intention to repossess the car and mailed it to the Wileys. The Wileys did not receive it. The notice was not sent via certified or registered mail.

13. The notice informed the Wileys of an amount that was owed in order to avoid repossession, and informed the Wileys of a total balance of $13,239.05.

14. For many months, the Wileys had worked with RAC to try to bring the loan current. They were informed by a RAC representative on the phone at one point that the terms of the loan had changed, but they Wileys never saw or signed any loan modification papers.

14. Plaintiffs made additional payments in February, March, and April 2013, after RAC drafted its notice of intention to repossess the car, but they were unable to bring the account current and, in June, 2013 RAC deemed them to be in default, and repossessed the car.

15. RAC did not send the Wileys a notice of its intention to repossess the car in June, and never complied with the CLEC requirement that any such notice be sent by certified or registered mail.

16. After having repossessed the car, RAC sent the Wileys a "Notice of Repossession and our Plan to Sell Property." The Notice failed to provide the Plaintiffs with complete or accurate information about their right to redeem the car and the costs of redemption:

a. For example, the Notice included repossession and storage costs although RAC had not sent a notice of intention to repossess following the January, February, March, and April payments that Wileys made;

3

b. The Notice states that RAC would send a second notice with further information about any sale and the Wileys' redemption rights, but no additional notice was sent.

c. The Notice states that the Wileys might be responsible for attorneys' fees and court costs, although no such fees or costs had been, or would be incurred in conjunction with the auction sale.

d. The Notice states that the sale would be a public sale, but the auctioneer informs the public and advertises that its sales are private, dealer only sales, and the auctioneer requires a substantial deposit from all prospective bidders.

17. On July 12, 2013, RAC sold the car to a car dealer at a private auction sale in West Virginia, approximately 380 miles from the Wileys' residence. RAC then sent a "deficiency notice" to the Plaintiffs. The deficiency notice fails to provide a complete accounting as required by CLEC subsequent to a private sale. The deficiency notice also seeks to recover sums that are not allowed under CLEC as a result of the earlier notice defects.

18. About one month after the sale, RAC sent the Wileys a letter confirming a supposed agreement by them to pay a deficiency balance in a different amount from the deficiency set forth in the original deficiency notice. Plaintiffs never made any such agreement.

19. Plaintiffs have contacted the auctioneer who conducted the private sale of their car, seeking detailed information about the sale, but the auctioneer will only provide confirmation of the date, and the name of the purchaser.

III.   **CLASS ACTION ALLEGATIONS**

20. Plaintiff seeks to represent a class of persons defined as follows:

> All Maryland residents whose cars were repossessed by RAC on or after June 1, 2011.

21. Upon information and belief, the class is so numerous as to make joinder of all members impracticable.

22. Class members share common issues of fact and law in that all of the relevant contracts are governed by CLEC, and RAC consistently fails to comply with the detailed notice requirements of CLEC in the course of its repossession and auction sale processes.

23. The Plaintiffs' claims are typical of class members' claims in that resolution of the common issues described above as to the Plaintiffs will control resolution as to all class members.

24. The Plaintiffs are adequate representatives of the class in that they have no conflicts of interest with the class and they have retained experienced counsel to prosecute the class action vigorously on behalf of the class.

25. A class action may be maintained in this matter because Plaintiffs seek on behalf of the class declaratory relief and injunctive relief, as well as restitution.

26. As to the damages claimed herein, a class action is superior to other methods for the efficient prosecution of this case because common issues of law and fact predominate over any issues affecting only individual members of the class, and because the nature of these consumer claims on their own is such that it would be extremely difficult and costly for class members to pursue the claims individually, even if they were aware of their rights under CLEC.

## COUNT I - DECLARATORY JUDGMENT

27. The allegations of the foregoing paragraphs 1 through 26 are incorporated herein by reference as if fully set forth.

28. The Plaintiffs and class members on the one hand, and RAC on the other, are parties to financing contracts.

29. The contracts at issue are installment sales contracts. The form of contract utilized by RAC specifically denotes the Credit Grantor Closed End Credit Provisions of Maryland Commercial Law Title 12, Section 10, as controlling.

30. Among other things, the referenced section of the Maryland Commercial Code governs the rights and obligations of the parties in the event that collateral, in this case cars, are repossessed. Among the duties imposed on RAC pursuant to the contracts is a duty to send notices of repossession to those whose cars are repossessed.

31. The law governs the form of that notice, requiring RAC to inform the defaulting borrower of his or his right to redeem the car by tendering the amount due at the time of the redemption. The law does not permit RAC to accelerate any part of the note by requiring that one or more future monthly payments be tendered as a condition to redemption by the borrower.

32. Because RAC does not send adequate pre-repossession notices, the law does not permit recovery of repossession costs or storage costs.

33. RAC has demanded repossession cost reimbursement in contravention of the statute.

34. The law also requires notification of whether the sale will be private or public. RAC's notice falsely states that the auction sale would be a public auction; the auction facility states that its sales are private, and requires a $500 deposit from prospective bidders.

35. Compliance with the notice provisions of § 12-1021 of the Commercial Code is a condition precedent to RAC's ability to seek deficiencies from borrowers.

36. RAC attempted to collect an alleged deficiency from the Wileys, and regularly seeks to collect deficiencies without having strictly complied with CLEC's notice requirements.

WHEREFORE, Plaintiffs on behalf of themselves and the class alleged herein, ask this Court for a declaratory judgment and for permanent injunctive relief as follows:

1.      Plaintiffs ask the Court to declare RAC's repossession notice practices to be legally deficient and invalid pursuant to Maryland Commercial Code Section 12-1021;

2.      Plaintiffs seek an injunctive order permanently requiring RAC to comply with its contracts and with the referenced statute by issuing notices of repossession which are complete and accurate, and notices of sale (deficiency notices) which are timely and accurate and which include the full accounting required for private sales.

3.      Plaintiffs seek an order enjoining RAC from further prosecution of any pending actions in this State in which it has filed or intends to file complaints for deficiency judgments, and order enjoining RAC from assigning or selling any alleged class member deficiencies to debt collection agencies or debt buyers.

## COUNT II - BREACH OF CONTRACT

37. The allegations of the foregoing paragraphs 1 through 26 are incorporated herein by reference as if fully set forth.

38. RAC and the Plaintiffs and class members herein are bound by the terms of contracts which incorporate Title 12, Article 10 of the Maryland Commercial Code.

39. In its standard procedures following repossession of class members' cars, RAC fails to abide by the terms of the contracts and Title 12, Article 10 of the Maryland Commercial Code, as described more particularly above.

40. By failing to convey accurate and complete information to defaulting borrowers, RAC breaches its contract with its customers and fails to conduct the auction sales of collateral in a commercially reasonable manner.

41. As part of its breach of contract, RAC sometimes also files actions against class members in the district courts of this State where it seeks and obtains deficiency judgments against them.

7

42. Alternatively, RAC assigns the alleged deficiencies to collection agencies who initiate dunning procedures for deficiencies that are not collectible and are invalid under Maryland law.

43. RAC's actions upon default and repossession of collateral are inconsistent with the contractual terms that bind RAC and class members are harmed by this practice.

WHEREFORE Plaintiffs seek judgment against RAC on behalf of himself and the class herein, for all sums paid by them to RAC or any collection agency retained by RAC post-repossession sales of their cars, plus prejudgment interest, plus the costs of defending improper actions to collect deficiencies, plus such others and further relief as this Court may deem appropriate.

## COUNT III - CIVIL PENALTIES FOR VIOLATION
## OF CREDIT GRANTOR CLOSED END CREDIT PROVISIONS

44. The allegations of the foregoing paragraphs 1 through 26 are incorporated herein by reference as if fully set forth.

45. RAC acquires contracts, or utilizes contracts, that elect CLEC as the governing statute for consumer loans.

46. CLEC makes mandatory certain notice requirements upon repossession of collateral. As described above herein, however, RAC has failed to adhere to CLEC's notice requirements both substatively and procedurally.

47. Despite numerous violations of CLEC's notice requirements, RAC has continued to collect seek deficiencies from defaulting borrowers, including interest, costs, fees and other charges with respect to the loans at issue. This practice violates the provisions of § 12-1018 of the Maryland Commercial Code.

48. RAC's actions in this regard have been deliberate in that, as licensed consumer lender in the State of Maryland RAC is well aware of the State's Commercial Code provisions governing its

contracts. In addition, RAC has been sued on other occasions in this State for similar violations, but has not corrected its illegal practices.

WHEREFORE Plaintiffs seek on behalf of themselves and all class members herein, treble damages under § 12-1018 of the Maryland Commercial Code, including three times the amount of interest, fees and othis charges collected by RAC, plus such other and further relief as this Court may deem appropriate.

## COUNT IV – CONSUMER DEBT COLLECTION VIOLATIONS

49. The allegations of the foregoing paragraphs 1 through 26 are incorporated herein by reference as if fully set forth.

50. RAC is a collector and Plaintiffs and the class members are persons as those terms are defined in the Maryland Consumer Debt Collection Act.

51. As a collector, RAC regularly violates § 14-202 of the Act in that RAC claims, attempts, or threatens to enforce a right with knowledge that the right does not exist, in that RAC pursues or has pursued collection actions against Plaintiff and the class herein, claiming full compliance with the consumers' contracts and applicable Maryland law, knowing that RAC is not in compliance with the contracts and the law, and in seeking amounts for redemption of repossessed collateral that CLEC prohibits RAC from requesting.

WHEREFORE Plaintiffs seek judgment on behalf of themselves and all class members herein against RAC for the three year period preceding the filing of this Complaint, for all amounts collected by it pursuant to the notices described herein, plus prejudgment interest, plus an award of attorneys' fees, plus emotional distress and mental anguish as permitted by Md. Comm. Code § 14-203, plus such other and further relief as this Court may deem appropriate.

Respectfully submitted,

_____

Thomas J. Minton
Goldman & Minton, P.C.
1500 Union Avenue, Suite 2300
Baltimore, Maryland 21211
Ph (410) 783-7575
Fax (410) 783-1711
tminton@charmcitylegal.com

Bernard T. Kennedy
The Kennedy Law Firm
P.O. Box 657
Edgewater, MD 21037
Ph (443) 607-8901
Fax (443) 607-8903
bernardtkennedy@yahoo.com

*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs  demand a jury trial in this matter for all issues so triable.

Respectfully submitted,

_____

Thomas J. Minton
Goldman & Minton, P.C.
1500 Union Avenue, Suite 2300
Baltimore, Maryland 21211
Ph (410) 783-7575
Fax (410) 783-1711
tminton@charmcitylegal.com