UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

JASON WILEY and REESHA WILEY,

    Plaintiffs,

v.

REGIONAL ACCEPTANCE
CORPORATION,

    Defendant.

Civil Action No. TDC-14-2709

**MEMORANDUM OPINION**

In 2013, Defendant Regional Acceptance Corporation ("RAC") repossessed and sold a car purchased by Plaintiffs Jason and Reesha Wiley (the "Wileys") after they defaulted on their car loan payments. Due to a number of alleged errors in RAC's notices of repossession and sale, the Wileys, on behalf of themselves and a prospective class of similarly situated individuals, have brought suit against RAC. They assert claims for declaratory and injunctive relief, breach of contract, violations of the Maryland Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Com. Law §§ 12-1001 *et seq.* (West 2015), and violations of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-101 *et seq.* (West 2015). Presently pending is RAC's Motion to Dismiss. ECF No. 11. The issues have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

The following facts are presented as alleged in the Complaint. In 2007, the Wileys, a married couple, bought a used 2004 Honda Accord from Majestic Motor Cars, Inc. ("Majestic")

in Glen Burnie, Maryland. Compl. ¶ 2, ECF No. 2. They financed the purchase through a retail installment sale contract ("RISC") with Majestic, which later assigned the RISC to RAC. *Id.* ¶¶ 3–4. The RISC is subject to the requirements of the CLEC. *Id.* ¶ 4. By January 2013, the Wileys had fallen behind on their payments, so RAC mailed them a notice of its intent to repossess the car. *Id.* ¶¶ 11–12. The Wileys have alleged that the notice was not sent by registered or certified mail and that they never received it. *Id.* ¶ 12. Despite making additional payments in February, March, and April 2013, the Wileys were unable to bring their account current. *Id.* ¶ 14.

In June 2013, RAC repossessed the car. *Id.* The Wileys have alleged that RAC did not send to them a separate notice of intent to repossess following their additional payments through April 2013, and that RAC "never complied with the CLEC requirement that any such notice be sent by certified or registered mail." *Id.* ¶ 15. After it repossessed the car, RAC sent the Wileys a "Notice of Repossession and our Plan to Sell Property" (the "Redemption Notice"). *Id.* ¶ 16. The Redemption Notice stated that RAC had repossessed the car and planned to sell it, and it outlined the Wileys' right to redeem (reacquire) the car and described the costs they would have to pay to do so, which included RAC's repossession and storage costs. *Id.* ¶¶ 16, 16(a). The Redemption Notice also informed the Wileys that RAC would sell the car at a public auction through an auctioneer. *Id.* ¶ 16(d). The Wileys allege that the auctioneer identified by RAC advertises that its sales are private, dealer-only sales and requires a substantial deposit from prospective bidders. *Id.* The Redemption Notice also stated that the Wileys would be responsible for any attorney's fees and court costs arising from the sale, though none were incurred. *Id.* ¶ 16(c).

On July 12, 2013, RAC sold the Wileys' car at a private sale in West Virginia, about 380 miles from where the Wileys lived. *Id.* ¶ 17. Afterwards, RAC sent the Wileys a "deficiency notice" that identified how much the Wileys still owed RAC, but did not provide a full accounting of the private sale, as required by the CLEC. *Id.* The Wileys were unable to learn any details of the sale by contacting the auctioneer directly. *Id.* ¶ 19. About a month after the sale, RAC sent the Wileys a letter purporting to confirm the Wileys' agreement to pay a deficiency balance in an amount different from the one contained in the Deficiency Notice, but the Wileys had made no such agreement. *Id.* ¶ 18.

The Wileys filed suit on August 22, 2014, seeking a declaratory judgment that RAC must provide timely, complete, and accurate redemption and deficiency notices as required by the CLEC (Count I). The Wileys also assert claims for breach of contract (Count II), a violation of the CLEC (Count III), and a violation of the MCDCA (Count IV), all based on the allegation that RAC's inadequate notices and conduct violated the CLEC.

On September 25, 2015, RAC filed its Motion to Dismiss. ECF No. 11. In submitting their Opposition to Defendant's Motion to Dismiss, ECF No. 12, the Wileys requested leave to amend the Complaint and attached a proposed Amended Complaint, *see* Pl.'s Opp. Def.'s Mot. Dismiss ("Pl.'s Opp.") at 3, ECF No. 12; *see also* Pl.'s Opp. Ex. 1 ("Am. Compl."), ECF No. 12-1. The proposed Amended Complaint continues to claim that the Wileys never received a Notice of Intent to Repossess, but it no longer alleges that RAC failed to send such a notice by certified or registered mail. Am. Compl. ¶ 18. The proposed Amended Complaint also alleges additional facts in support of the claim that the Wileys' car was sold at a private dealer sale, including asserting that the auctioneer's website has markers indicating that RAC's auctions are "restricted to dealers." *Id.* ¶ 21. It also alleged that the sale was not conducted in a "commercially

3

reasonable manner." *Id.* ¶ 49. On November 3, 2014, RAC filed its Reply in Response to Plaintiff's Opposition to Defendant's Motion to Dismiss, in which it opposed granting the Wileys leave to amend the Complaint. Def.'s Reply at 2 & n.2, ECF No. 13.

## DISCUSSION

### I. Leave to Amend

Under Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Here, RAC opposes amendment of the Complaint. Rule 15 also provides that "[t]he court should freely give leave when justice so requires." *Id.* Because no answer has yet been filed, and because this is the Wileys' first request for leave to amend, the Court will grant leave. The Wileys' are directed to file clean and redline copies of its proposed Amended Complaint, ECF No. 12-1, which shall be docketed.

### II. Motion to Dismiss

In its Motion, RAC seeks dismissal based on its assertion that the Wileys have failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Specifically, it claims that the Complaint does not sufficiently allege a violation of the CLEC and that, in the absence of a plausible claim of a CLEC violation, the Wileys' claims for a declaratory and injunctive relief, breach of contract, and a violation of the MCDCA necessarily fail. Def.'s Mem. Supp. Mot. Dismiss Pl.'s Class Action Compl. ("Def.'s Mem.") at 1–2, ECF No. 11-1. Although the Motion was directed at the original Complaint and arguably could be denied as moot in light of the Amended Complaint, because the parties each had an opportunity to address arguments relating to the Amended Complaint, *see* Pl.'s Opp. at 17; Def.'s Reply at 4, and in the interests of

efficient case management, the Court will rule on the merits of the arguments in the Motion to Dismiss as they apply to the Amended Complaint.

**A.     Legal Standard**

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009). A claim is plausible when the facts pled allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

In moving to dismiss, RAC has made several factual arguments, including that it had sent the notice of intent to repossess by certified mail, that the language of its pre- and post-repossession notices complied with the CLEC, and that the auctioneer's website states that it engages in public repossession auctions as well as private, dealer-only sales. Def.'s Opp. at. 10, 14. As a result, both parties have attached exhibits to their memoranda to address those arguments, including copies of the notices and screenshots of the auctioneer's website. When deciding a Rule 12(b)(6) motion, however, the court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Because the attached exhibits do not adequately address the merits of the claims presented, and the opportunity for sufficient discovery has not yet been afforded in this case, the Court excludes all attached exhibits from

consideration and construes the Motion as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *See* Fed. R. Civ. P. 12(d).

    **B.**    **Count III:  Violation of the CLEC**

In their Complaint, the Wileys assert that RAC violated the notice requirements of the CLEC in a variety of ways, including by (1) failing to provide them with a notice of the intent to repossess, then seeking recovery of repossession and storage costs; (2) failing to state accurately whether the resale of their car would be public or private, and to provide a "full accounting" of the private sale of their car; and (3) making various inaccurate statements in the Redemption Notice. Compl. ¶¶ 15–17, 32–36; Am. Compl. ¶¶ 18–20, 27–29, 45–48, 50. In the Amended Complaint, the Wileys further assert that the sale was not conducted in a "commercially reasonable manner." Am. Compl. ¶ 49. RAC argues that the Wileys have not provided sufficient allegations to support these theories. For the reasons set forth below, the Court finds that the Wileys have not stated a claim arising from the alleged failure to provide a notice of intent to repossess, but that they have stated a plausible claim for a violation of the CLEC provisions requiring that there be a full accounting of a private sale and that the sale be conducted in a "commercially reasonable manner."

    **1.**    **The CLEC Provisions**

The Maryland CLEC authorizes a credit grantor such as RAC to "repossess tangible personal property securing a loan . . . if the consumer borrower is in default." Md. Code Ann., Com. Law § 12-1021(a)(1). To protect the consumer borrower's interest throughout the process, the CLEC provides for a series of notices. Before the credit grantor repossesses the property, it may send to the borrower written notice of the intent to repossess at least 10 days before the expected repossession. § 12-1021(c)(1). "The notice may be delivered to the consumer

borrower personally or sent to him at his last known address by registered or certified mail." § 12-1021(d). The repossession notice is discretionary, but if the credit grantor provides the notice, then the borrower must "pay the actual and reasonable expenses of retaking and storing the property" in order to redeem or reacquire the property. § 12-1021(h).

Within five days after repossessing the property, the credit grantor must send, by hand delivery or registered or certified mail, written notice of, among other things, (1) the borrower's right to redeem the property and the amount that must be paid to do so; (2) the borrower's rights relating to the potential resale of the property; and (3) the borrower's liability for any deficiency following resale. § 12-1021(e). At least 10 days before any resale of the property, the credit grantor is also required to send a written notice to the borrower of the time and place of the resale, by certified mail, return receipt requested. § 12-1021(j)(1)(ii).

The property can be resold at a public auction or private sale; in either case, the resale "must be accomplished in a commercially reasonable manner." §§ 12-1021(j)(1)(i), 12-1021(j)(1)(iii). Following the sale, the credit grantor is required to provide different information to the borrower depending on whether the resale was public or private. After a public auction, the credit grantor need only send to the borrower a written statement showing the distribution of the proceeds. § 12-1021(k)(3). In contrast, private sales require the credit grantor to send to the borrower, in writing, "a full accounting" of the sale, including:

(i)   The unpaid balance at the time the goods were repossessed;

(ii)  The refund credit of unearned finance charges and insurance premiums, if any;

(iii) The remaining net balance;

(iv)  The proceeds of the sale of the goods;

(v)   The remaining deficiency balance, if any, or the amount due the buyer;

 (vi) All expenses incurred as a result of the sale;

 (vii) The purchaser's name, address, and business address;

 (viii) The number of bids sought and received; and

 (ix) Any statement as to the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality.

§ 12-1021(j)(2).

If the credit grantor fails to comply with any of the notice requirements, "the credit grantor shall not be entitled to any deficiency judgment to which he would be entitled under the loan agreement." § 12-1021(k)(4). Moreover, the CLEC contains a broader damages provision that states: "Except for a bona fide error of computation, if a credit grantor violates any provision of this subtitle the credit grantor may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." § 12-1018(a)(2).

  **2.** **Repossession and Storage Costs**

In the original Complaint, the Wileys alleged that RAC violated the CLEC when it did not send them the discretionary Notice of Intent to Repossess by certified or registered mail, the consequence of which was that RAC violated the CLEC when it stated in the Redemption Notice that the Wileys owed repossession and storage costs. Md. Code Ann., Com. Law § 12-1021(h). In its Motion, RAC asserts that this allegation fails to state a claim under Rule 12(b)(6). In the Amended Complaint, the Wileys no longer claim that the Notice of Intent to Repossess was not sent by certified or registered mail, but instead simply alleges that they never received it. See Am. Compl. ¶ 18.

Under the CLEC, there is no requirement that a Notice of Intent to Repossess be sent. Although the Wileys allege that they did not receive the Notice, the CLEC specifically provides

that a Notice of Intent to Repossess may be "sent to [the consumer borrower] at his last known address by registered or certified mail." *See* Md. Code Ann., Com. Law § 12-1021(d). Having affirmatively withdrawn its original allegation that the Notice was not sent by registered or certified mail, the Wileys' claim rests on the premise that even if the requirement of sending the Notice by certified mail is satisfied, a credit grantor nevertheless violates the CLEC if the borrower does not actually receive it. The Wileys have cited no authority in support of this position, and the Court declines to adopt such a rule. Thus, the Wileys have not alleged a plausible claim for relief based on a lack of receipt of a Notice of Intent to Repossess.

Even if the Wileys had raised a valid argument that the sending of the Notice of Intent to Repossess was deficient, they still have not stated a valid claim arising from the inclusion of repossession and storage costs in the Deficiency Notice. To the extent that a failure to provide a Notice of Intent to Repossess affects the payment of repossession or storage costs, the failure only affects whether the Wileys were obligated to pay repossession and storage costs in order to redeem the car prior to resale. *See* Md. Code Ann., Com. Law § 12-1021(h)(3). Under the CLEC, if this discretionary notice is provided, the Wileys would have to "pay the actual and reasonable expenses of retaking and storing the property" in order "[t]o redeem the property." *Id.* The Wileys, however, have never alleged that they redeemed, or attempted to redeem, the car prior to resale. The lack of a Notice of Intent to Repossess has no bearing on whether RAC is entitled to seek those costs as part of the deficiency balance. *See, e.g., Smith v. Toyota Motor Credit Corp.*, No. WDQ-12-2029, 2013 WL 1325460, at *3 (D. Md. Mar. 28, 2013) ("§ 12-1021(h)(3) has no application to . . . recovery of repossession costs; on its face the subsection governs the cost to be borne by a consumer borrower who chooses to redeem his property.").

Accordingly, the Motion to Dismiss is granted as to claims in the Amended Complaint arising from the alleged lack of Notice of Intent to Repossess.

### 3. Private Sale

The Wileys have stated a plausible claim that RAC violated the CLEC by erroneously stating in its Redemption Notice that the Wileys' car would be sold at a public auction, and then, after selling the car at a private sale, failing to provide the "full accounting" required by the CLEC. Compl. ¶¶ 15–17. RAC asserts that the Complaint lacks sufficient facts to establish that the Wileys' car was sold at a private sale. Def.'s Mem. at 13–20. Even focusing on only the allegations in the original Complaint, the Wileys, have alleged that "[t]he Notice states that the sale would be a public sale, but the auctioneer informs the public and advertises that its sales are private, dealer only sales, and the auctioneer requires a substantial deposit from all prospective bidders." Compl. ¶ 16(d). The Wileys argue that these facts provide a basis to support a plausible claim for relief.

It is of limited value that the Wileys allege that the auctioneer chosen by RAC "requires a substantial deposit from all prospective bidders" to support the claim that their car was sold at a private sale. Although the Court of Appeals of Maryland has held that an admissions fee transforms a "public auction" into a private sale, the court distinguished a bidder's fee from an admissions fee and indicated that a bidder's fee does not necessarily transform a public sale into a private one. *See Gardner v. Ally Fin. Inc. (Gardner II)*, 61 A.3d 817, 821, 828 (Md. 2013); *Pyles v. Goller*, 674 A.2d 35, 37 (Md. Ct. Spec. App. 1996) (noting that a "public auction" required a $5,000 fee to bid); *see also Gardner v. Ally Fin. Inc. (Gardner I)*, 488 F. App'x 709, 713 (4th Cir. 2012) (citing *Pyles*). Under Maryland law, openness and competitive bidding are "the gravamen of a public auction." *Gardner II*, 61 A.3d at 827. "Openness and transparency,

then, are dependent on the ability to observe the proceeding to ensure . . . the rules are being followed and those in control are not engaging in collusive or unfair practices." *Id.* While an admissions fee obscures transparency by imposing a barrier between the public and the sale, a bidder's fee imposed only on those who intend to bid, does not necessarily affect the public's ability to observe the proceedings and thus does not touch on the openness and transparency of the sale in the same way. *Id.* at 821, 828.

But the Wileys' allegation that the auctioneer advertises that its sales are private, dealer-only sales does support a plausible claim that the sale of their car was, in fact, private. By its very nature, a dealer-only sale is one in which members of the public cannot participate. *See, e.g., Ford Motor Credit Co. v. Solway*, 825 F.2d 1213, 1218 (7th Cir. 1987) (concluding that a dealer-only sale is private); *see also Beard v. Ford Motor Credit Co.*, 850 S.W.2d 23, 28–29 (Ark. Ct. App. 1993) (concluding that "the dealers-only auction, which was restricted to the participation of other dealers, was a private sale"); *Am. Gen. Fin. Servs., Inc. v. Woods-Witcher*, 669 S.E.2d 709, 710-11 (Ga. Ct. App. 2008). Although RAC claims that the auctioneer has also advertised that it engages in public auctions, and that in fact the Wileys' car was sold at such an auction, at the Rule 12(b)(6) stage the Court must accept the allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. It is a fair inference that an auctioneer that advertises dealer-only private sales followed that practice in this instance. In turn, the Wileys allege that, because the sale was private, RAC violated the CLEC by failing to provide a full accounting of the sale. Thus, in alleging that the auctioneer's sales are private, dealer-only sales, the Wileys have sufficiently stated a claim under the CLEC.[1]

---

[1] The Court reaches this conclusion based on the allegations in the original Complaint, which were the only allegations available at the time of the filing of the Motion to Dismiss. The additional allegations in the Amended Complaint relating to a private sale, such as the assertion

11

### 4. Additional Redemption Notice Deficiencies

In addition to these two primary claims, the Wileys allege additional deficiencies with RAC's processes, including that the Redemption Notice inaccurately stated that (1) they may be responsible for attorney's fees and court costs, even though no such fees were incurred in the sale; and (2) RAC would send a second notice outlining the Wileys' redemption rights, but RAC never sent a second notice. Even assuming that the Redemption Notice contained the alleged errors, those deficiencies would not amount to violations of the CLEC. The CLEC requires only that the redemption notice "briefly state" the right of the consumer borrower to redeem the car, the amount payable to redeem, and his liability for deficiency. Md. Code Ann., Com. Law § 12-1021(e). Depending on the terms of the RISC, the Wileys may well have been responsible for attorney's fees and court costs in conjunction with the sale. Even accepting the Wileys' allegation that they did not owe such costs, they have provided no legal authority to support the premise that such a notation would constitute a violation of the CLEC actionable in court. Likewise, there is no legal basis to support the claim that a failure to send a second Redemption Notice referenced in the first Notice would constitute a violation of the CLEC. A second Redemption Notice is not contemplated in, much less required by, the CLEC. While the CLEC imposes a specific penalty for notice violations, see Md. Code Ann., Com. Law §§ 12-1018(a)(2), 12-1021(k)(4), there is nothing in the CLEC that establishes a violation for an inaccurate statement in the Redemption Notice beyond the affirmative requirements contained in

---

that the auctioneer's website contained markings indicating that RAC auctions were restricted to dealers, see Am. Compl. ¶ 21, provide further support for the claim but are not necessary for the Court's ruling.

the statute,[2] *see Gardner II*, 61 A.2d at 828 (considering whether the sale was public or private for purposes of assessing compliance with the affirmative requirement for a full accounting of a private sale, not whether an inaccurate statement on the type of sale would violate the CLEC). The Motion to Dismiss is therefore granted with respect to these allegations.

### 5. "Commercially Reasonable Manner"

Finally, the Wileys allege for the first time in the Amended Complaint that RAC failed to conduct the sale in a "commercially reasonable" manner on the ground that RAC sold the car "in West Virginia, approximately 380 miles from the Wileys' residence" in Maryland.[3] Compl. ¶ 17; Am. Compl ¶¶ 23–25. They further allege that as a result, their car sold for "about half, or less, than half, of its value." Am. Compl. ¶ 26.

Under the CLEC, "[a]ny sale of repossessed property must be accomplished in a commercially reasonable manner." Md. Code Ann., Com. Law § 12-1021(j)(1)(iii). Although a low sales price is one factor to consider in the analysis, the "primary focus" of commercial reasonableness is the "procedures employed for the sale." *Gardner II*, 61 A.3d at 826. In *Gardner II*, the court noted that "an improper location" for the sale was among the procedural factors that commentators have stated "could influence a finding of commercial unreasonableness of a sale." *Id.* Here, the Wileys claim not only that their car was sold for an unreasonably low price, but also that the location of the sale was unreasonable because the distance to West Virginia limited their ability to monitor the sale, increased the shipping costs associated with the sale, and limited the number of potential bidders because the population in

---

[2] For this reason, the Court also finds that the allegation of inaccuracies with the specific figures stated in the Redemption Notice, Am. Compl. ¶ 19, does not support a cause of action.

[3] Because RAC fully briefed this issue in its Reply Memorandum in a manner that could be construed as seeking dismissal of this allegation, the Court deems it appropriate to address this issue at this time.

13

West Virginia is significantly lower than that of the part of Maryland between Baltimore and Washington, D.C. from which the car originated. Am. Compl. ¶¶ 23–25. At the Rule 12(b)(6) stage, the Court finds a plausible claim and declines to dismiss this aspect of the Amended Complaint pursuant to the Motion to Dismiss.

### III.    Declaratory Judgment, Breach of Contract, and MCDCA Claims

RAC's argument for dismissal of these additional claims is premised entirely on a finding that the Wileys' CLEC claims must be dismissed. *See* Def.'s Mem. at 23. Because the Court has concluded that the Wileys have sufficiently stated a claim under the CLEC, the Motion to Dismiss is denied as to their claims for a declaratory judgment, breach of contract, and a violation of the MCDCA.

### CONCLUSION

For the foregoing reasons, the Wileys' request for leave to amend the complaint is GRANTED, and they are directed to file a clean copy of the Amended Complaint forthwith. RAC's Motion to Dismiss, ECF No. 11, is GRANTED IN PART and DENIED IN PART. The Motion is DENIED as to claims arising from the alleged private sale and RAC's failure to include a full accounting, and from the alleged failure to conduct the sale in a "commercially reasonable manner." The Motion is GRANTED as to the remaining claims. A separate Order follows.

Date: May 4, 2015

/s/ THEODORE D. CHUANG
United States District Judge